UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LLEWELLYN GEORGE,

                                Plaintiff,                  10-cv-8091 (NSR)

  -against-                                      OPINION AND ORDER

ROCKLAND STATE PSYCHIATRIC CENTER;
JAMES BOPP; EDWARD HERMAN; MICHELINE
JOSPITRI; SOSNUMOLU SHOYINKA; DARBY
CALLAHAN; SAVANI NARGIS; CLAUDIA
STEINBERG; DIANE POLHEMUS; AND IRENE
MILLIKEN,

                              Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Llewellyn George ("Plaintiff") commenced this action on October 25, 2010, against Defendants Rockland Psychiatric Center ("Rockland"), s/h/a Rockland State Psychiatric Center; James Bopp, Edward Herman, Micheline Jospitri, Darby Callahan, Nargis Savani, s/h/a/ Savani Nargis, Claudia Steinberg, Diane Polhemus, and Irene Milliken (collectively, the "Individual Defendants"); and Sosnumolu Shoyinka,[1] alleging that Defendants violated his First, Eighth, and Fourteenth Amendment rights.

       Defendant Rockland and the Individual Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, asserting there is no genuine issue of material fact

---

[1] Defendant Sosunmolu Shoyinka does not appear to have been served with the summons and complaint as required by Fed. R. Civ. P. 4. Defendant Shoyinka is thus not a part of the group of Individual Defendants that have moved for summary judgment at this time. Any further reference in this Opinion and Order to "Defendants" includes only Rockland and the Individual Defendants, unless otherwise noted.

1

Copies mailed/faxed 10/23/2014
Chambers of Nelson S. Román, U.S.D.J.

and that Defendants are entitled to judgment on all of Plaintiff's claims. For the following reasons, Defendant's motion for summary judgment is GRANTED.

I.  BACKGROUND

The facts are gleaned from the parties' 56.1 statements,[2] affidavits, and exhibits submitted with this motion and the pleadings and are not in dispute except where noted.

Defendant Rockland Psychiatric Center operates an outpatient treatment center called the White Plains Service Center ("WPSC") in White Plains, New York. Plaintiff received mental health treatment at WPSC on an outpatient basis between November 2009 and February 2011 as a condition of his parole, following his release from prison in November 2009. The Individual Defendants were therapists, psychiatrists, and other employees at WPSC and Rockland at the time that Plaintiff received treatment there.[3] In addition to receiving treatment from WPSC psychiatrists and therapists, including defendants Shoyinka, Callahan, Savani, and Steinberg, Plaintiff also received vocational training for a short period of time in WPSC's food service program under the supervision of defendants Milliken and Polhemus.

As a condition of Plaintiff's parole, WPSC provided updates on Plaintiff's treatment to his parole officer. On February 18, 2010, Defendant Callahan wrote to Plaintiff's parole officer.

---

[2] Plaintiff's response to Defendants' Rule 56.1 Statement does not conform to the requirements of Local Civil Rule 56.1(b) and does not plead any specific facts or evidence in response to Defendants' summary judgment motion. While the Court must "extend extra consideration to a pro se plaintiff" in deciding a motion for summary judgment, *see Gabai v. Jacoby*, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992), where the plaintiff is notified pursuant to Local Rule 56.2, even "[p]ro se litigants are then not excused from meeting the requirements of Local Rule 56.1," *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). "Generally, the plaintiff['s] failure to respond or contest the facts set forth by the defendant in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003). Thus, while the Court reads Plaintiff's opposition papers liberally, most of the facts set forth by Defendants as undisputed have not been contested by Plaintiff.

[3] Darby Callahan was Plaintiff's therapist until summer 2010. After her retirement, Claudia Steinberg became Plaintiff's therapist. Nargis Savani was Plaintiff's psychiatrist during his treatment at WPSC. Sosunmolu Soyinka was a public psychiatry fellow at WPSC and Micheline Jospitri was a psychiatrist at WPSC. Edward Herman is the Medical Director of Community Services at WPSC and was the highest-ranking psychiatrist for RPC's outpatient services during Plaintiff's treatment at WPSC. James Bopp was the Executive Director of Rockland from 1996-2010.

Plaintiff missed several appointments at WPSC and, in May 2010, Defendant Shoyinka alerted Plaintiff's parole officer that Plaintiff had missed his group therapy sessions for three weeks. Plaintiff sent a letter soon after to Defendant Jospitri complaining about Shoyinka's contact with his parole officer, but Plaintiff does not appear to have suffered any consequences related to the letters from WPSC staff to his parole officer.

In May 2010, Plaintiff's treatment team at WPSC recommended that Plaintiff receive a course of treatment that included medication, weekly appointments with his therapist and psychiatrist, and substance abuse treatment. Plaintiff's parole officer was notified of the treatment team's recommendation. Plaintiff alleged that he was required to attend a full-time drug treatment program, but testified that he did not, and was not forced to, attend the program. Plaintiff also alleged that Defendants attempted to force him to take psychotropic medication, but testified that he was never actually forced to do so.

As a result of outbursts by Plaintiff and his refusal to attend substance abuse treatment or take the medication prescribed by his treatment team, Plaintiff was limited to entering WPSC only when he had appointments with his therapist and psychiatrist. Plaintiff alleged that he was banned from WPSC in violations of his constitutional rights but Defendant avers, and Plaintiff's testimony supports, that he was not completely banned, but rather limited to entering the clinic when he had an appointment.

Plaintiff complained of alleged wrongs in writing to Defendants on several occasions. First, Plaintiff asserted in a May 7, 2010, letter to Defendant Jospitri that Defendant Shoyinka had tried to get him in trouble with his parole officer. Second, he complained to Dr. Mary Barber in a July 26, 2010, letter about being excluded from WPSC. Third, Plaintiff wrote to Defendant Bopp on August 24, 2010, asserting that Defendant Steinberg had barred him from entering

WPSC and provided false accounts to his parole officer, and that Defendants Jospitri, Savani, and Steinberg were conspiring to force him to take psychiatric medication. Finally, Plaintiff wrote to Defendant Bopp a second time on August 30, 2010, alleging for the first time that he had been sexually harassed in February 2010 by defendants Milliken and Polhemus while he was participating in the food services program vocational training. The sexual harassment alleged by Plaintiff consists of "no more than three" instances in which Defendant Milliken rubbed up against Plaintiff and two or three times when Defendant Polhemus put her hand on Plaintiff's chest, behind and "private area." Plaintiff testified that he did not perceive some of these instances as sexual.

Plaintiff commenced this action on October 5, 2010, alleging violations of his First, Eighth, and Fourteenth Amendment rights. He seeks damages in the amount of fifty million dollars. Defendants filed the instant motion on April 9, 2014.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. The Rule states, in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party, which must

identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the records" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary

judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

The Court must "extend extra consideration to a pro se plaintiff who is to be given 'special latitude on summary judgment motions.'" *Gabai v. Jacoby*, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992) (quoting *McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986)), and "[t]he papers of a party proceeding pro se should be read liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Lombardo v. Stone*, 99-CV-4603, 2001 WL 940559, at *5 (S.D.N.Y. Aug. 20, 2001) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Even a *pro se* plaintiff, however, "cannot defeat a motion for summary judgment by relying merely on the allegations of a complaint." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177 (S.D.N.Y. 2009). "[W]hen confronted with evidence of facts that would support summary judgment, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id*.

### III. DISCUSSION

#### A. Eleventh Amendment Immunity

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citing cases holding unconsenting State immune from suits by own citizens, including *Hans v. Louisiana*, 134 U.S. 1 (1890)); *see also Pennhurst State School & Hospital v. Halderman*, 45 U.S. 89, 98 (1984) (holding that Eleventh Amendment barred federal courts from "entertain[ing] a suit brought by a citizen against his own State.").

Even if the State itself is not a named party to the suit, it may nonetheless be barred by the Eleventh Amendment: "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Edelman*, 415 U.S. at 663 (quoting *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945)). Rockland is a facility within the N.Y. Office of Mental Health, an agency of the State of New York, and thus enjoys immunity from suit under the Eleventh Amendment for claims seeking only money damages. *See* N.Y. Mental Hygiene Law § 7.17(b) (establishing Rockland and other facilities as part of the N.Y. Office of Mental Health); *see also Greenwood v. State of New York*, 939 F. Supp. 1060, 1065 (S.D.N.Y. 1996), *aff'd in part, vacated in part*, 163 F.3d 119 (2d Cir. 1998) (finding that psychiatric facility within N.Y. Office of Mental Health was state agency protected by Eleventh Amendment).

A state may waive its sovereign immunity and consent to be sued in federal court, but such consent must be unequivocally expressed. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Congress also has power to abrogate Eleventh Amendment immunity in certain circumstances, such as with respect to the rights protected by the Fourteenth Amendment. *See*

*Fitzpatrick v. Bitker*, 427 U.S. 445, 456 (1976). In order to do so, however, there must be an unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several states. *See Pennhurst*, 45 U.S. at 99; *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override states' Eleventh Amendment immunity). No waiver or abrogation of sovereign immunity applies to this suit.

Plaintiff cannot prevail on a claim for money damages against Rockland for past harm as a matter of law and summary judgment is appropriate as to the claims against Rockland.

### B. First Amendment Claims

It is not clear from Plaintiff's pleadings exactly what type of First Amendment violation he alleges but, giving Plaintiff's Complaint every favorable inference, it appears that he asserts a retaliation claim against defendants Steinberg, Savani, and Jospitri. (Compl. ¶ III.C (alleging defendants "tried to silence plaintiff [sic] complaints by attempting to force him to take psychotropic medication as well as threatening to report noncompliance to my parole officer's supervisor"); *see also* Pastore Decl. Ex. 2 [hereinafter, "George Tr."] 66:7-68:21.) "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *see also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Plaintiff appears to allege retaliation in the form of attempted forced medication and unjustified reports to his parole officer.

"To survive summary judgment on a section 1983 First Amendment retaliation claim a plaintiff must demonstrate that . . . [his] speech was a substantial or motivating factor in an adverse decision taken by the defendant." *Beechwood Restorative Care Center v. Leeds*, 436 F.

3d 147, 152 (2d Cir. 2006). Plaintiff has provided no evidence that Defendants' actions were motivated by his speech. In fact, he has testified to several pieces of information that support the conclusion that Defendants' actions stemmed from other motives. For example, Plaintiff testified that he had missed appointments and that it was Defendant Steinberg's responsibility to report to his parole officer about his treatment; he also provided a recording of a session with Steinberg in which she stated that the treatment team "think[s] that you [Plaintiff] have poor impulse control, lose your temper too easily and you need to be on some medication to help you calm down and think more clearly." (Pl.'s Opp'n Mot. Summ. J. Ex. 1 [hereinafter, "George Tr. II"] 132:25-133:6.) Where an official's conduct is objectively reasonable, a plaintiff that alleges an unconstitutional subjective intent "must proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995). Plaintiff has failed to provide any "particularized evidence" supporting his claim of an improper motive, relying only upon his own allegations contained in the Complaint. This is not sufficient to withstand summary judgment.

Plaintiff encounters a similar problem regarding the third element. For the third element, a plaintiff must show "either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160. Plaintiff has not provided evidence that his First Amendment rights were actually chilled or that he suffered any other concrete harm. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). In addition, Plaintiff testified that he was not actually forced to take any medication, (George Tr. 82:13-24); he also testified that he was not adversely affected by any of the reports made to his parole officer, (George Tr. 114:15-18).

Without evidence of improper motive and chilling or other concrete harm, summary judgment in favor of Defendants on the First Amendment claims is appropriate.

### C. Eighth Amendment Claims

The Eighth Amendment forbids the imposition of punishment that is "cruel and unusual." U.S. Const. amend. VIII. Plaintiff claims that his rights under the Eighth Amendment have been violated by Defendants, specifically Defendants Savani, Steinberg, and Jospitri. (George Tr. 68:18-21.) According to Plaintiff's testimony, the basis for his Eighth Amendment claims is their failure to investigate and correct "the wrong that was being done to [him]," specifically his allegations of forced medication and being banned from the WPSC. (George Tr. 68:18-69:17.)

"[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). At the time that the alleged Eighth Amendment violations occurred in this case, Plaintiff was on parole and thus was not incarcerated or institutionalized. Even if the facts are read in the light most favorable to Plaintiff, the actions that form the basis of his claim do not include any type of punishment by the State for a crime. Plaintiff's claim that he was deprived of psychiatric care that Defendants' alleged actions (or lack thereof) constitute deliberate indifference is thus appropriately analyzed under the Fourteenth Amendment, not the Eighth. *See, e.g., McGhie v. Main*, 11-CV-3110, 2011 WL 4852268 at *5 (E.D.N.Y. Oct. 12, 2011) ("[Plaintiff] was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care. . . . The fact that such psychiatric care was a condition of [Plaintiff]'s supervised release does not alter the analysis."); *Taylor v. Garwood*, 98 F. Supp. 2d 672, 677 (E.D. Pa. 2000) (finding that relationship between

probation officer and probationer was more like relationship between child and county in *Deshaney*[4] than special relationship in *Estelle*[5]).

### D. Fourteenth Amendment Claims

Plaintiff alleges that Defendants have violated his Fourteenth Amendment due process and equal protection rights; however, he has not provided any specific facts or evidence to support his claims, and summary judgment in favor of Defendants is proper on the Fourteenth Amendment claims.

#### 1. Forced Medication and Drug Treatment

The Supreme Court has "recognized that an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)); *see also Riggins v. Nevada*, 504 U.S. 127, 133-35 (1992) ("The forcible injection of medication into a nonconsenting person's body . . . represents a substantial interference with that person's liberty.") (quoting *Harper*, 494 U.S. at 229). Plaintiff alleges that Defendants attempted to force him to take psychotropic medications and to pressure him into attending a full-time drug treatment program. Yet, Plaintiff testified in his deposition that he was never forcibly medicated during his treatment at Rockland, (George Tr. 82:19-24), and he admitted that Defendants Savani, Steinberg and Shoyinka "did not force plaintiff to take psychotropic medication." (Pastore Decl. Ex. 5 ¶ 5; Pastore Decl. Ex. 6 ¶ 5) Plaintiff also admitted that he never attended a full-time drug treatment program. (George Tr. 110:3-18; Pastore Decl. Ex. 5 ¶ 7; Pastore Decl.

---

[4] *Deshaney v. Winnebado County Dept. of Social Services*, 489 U.S. 189 (1989) (holding that State had no constitutional duty to protect child from his father after receiving reports of possible abuse and that State's failure to protect individual against private violence does not constitute violation of due process clause).
[5] *Estelle v. Gamble*, 429 U.S. 97 (1976) (holding that deliberate indifference to serious medical needs of prisoners constitutes violation of Eighth Amendment).

Ex. 6 ¶ 7) While Plaintiff has alleged in his Complaint that Defendants attempted to force him to take psychotropic medications and attend a drug treatment program, he has failed to "set forth specific facts showing that there is a genuine issue" of fact over whether Defendants attempted to forcibly medicate or treat Plaintiff. *See Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001).

Plaintiff cannot defeat summary judgment simply by relying on the allegations in his Complaint and his only proffer of evidence—a portion of the transcript of a deposition of Plaintiff in which portions of a recording of a therapy session between Plaintiff and Defendant Steinberg were played—does not contain any evidence that Defendants attempted to forcibly medicate Plaintiff. (*See* George Tr. II.) The recording contains evidence that the Individual Defendants involved in Plaintiff's treatment believed that he needed to be in drug treatment and on medication,[6] but does not indicate that Defendants attempted to force him to comply with their suggestion. Defendants have met their preliminary burden of presenting evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, however, has failed to proffer evidence in admissible form to raise a genuine issue of material fact.

### 2. Substantive Due Process

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebado County Dept. of Social Services*, 489 U.S. 189, 196 (1989). The Constitution does impose affirmative duties of

---

[6] *See* George Tr. II 132:24-133:6 ("They think you need to be in a drug program. They also think that you have poor impulse control, lose your temper too easily and you need to be on some medication to help you calm down and think more clearly . . .").

care and protection in certain limited circumstances, however. In such cases, the government's "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id*. at 200; *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). The Second Circuit, interpreting *DeShaney*, has concluded that there are two exceptions to the general rule that there is no affirmative right to governmental aid: the "special relationship" exception, and the "state created danger" exception. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). Plaintiff's claims of deliberate indifference to his medical needs on the part of Rockland and the Individual Defendants do not implicate the "state created danger" exception, so this Court discusses only the former.

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," a special relationship and an attendant constitutional duty arise. *DeShaney*, 489 U.S. at 200. If the government then fails to provide for that individual's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id*. Such a special relationship can arise in scenarios involving incarceration, institutionalization, "or other similar restraint of personal liberty." *Id.*; *see also Youngberg v. Romeo*, 457 U.S. 307 (1982) (duty to provide necessary health services to involuntarily committed mental patients); *Estelle v. Gamble*, 429 U.S. 97 (1976) (duty to provide adequate medical care to incarcerated prisoners).

The Supreme Court in *DeShaney* held that a special relationship theory did not apply to a case in which the individual was no longer in the custody of the state. *DeShaney*, 489 U.S. at 201. In determining whether a duty arises under this exception, the Second Circuit has focused on whether the individual is in "involuntary custody." *Matican*, 524 F.3d at 156. Involuntary custody may exist when an individual's freedom is "somewhat curtailed," such as when the State has legal custody of the individual, even if it does not have physical custody. *Compare Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005) (holding that State retained minimal duty to parolee after his release, to extent that it continued to impose limitations on parolee) *with McGhie v. Main*, 11-CV-3110, 2011 WL 4852268, at *5 (E.D.N.Y. Oct. 12, 2011) (dismissing claim that parole officer failed to provide plaintiff with mental health treatment because plaintiff not incarcerated or institutionalized and was free to find own treatment). While Plaintiff was on parole, he was free to find his own medical treatment and there is no evidence that he was required to receive treatment specifically at Rockland's White Plains Service Center. Furthermore, the admissible evidence submitted by the parties establishes that Plaintiff does not appear to have been denied mental health treatment at any point in time. While Plaintiff's Complaint alleges that he was "bann[ed]" from Rockland's White Plains Service Center (Compl. ¶ III.C), he testified that he was allowed to attend appointments with his therapist and psychiatrist at WPSC, and that he was not completely barred from the premises. (George Tr. 194:23-195:13; Pastore Decl. Ex. 4 ("I am now barred from entering the service center building *except for when I have an appointment*.") (emphasis added)). Plaintiff's admissions that he received his mental health treatment and was not actually barred from the premises leave no triable issue of fact as to his claims that Defendants were deliberately indifferent and denied him medical treatment.

### 3. Sexual Harassment and Equal Protection

Sex-based discrimination may be actionable against individuals under 42 U.S.C. § 1983 as a violation of equal protection under the Fourteenth Amendment. *See Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). The analysis for such claims is similar to the analysis for Title VII employment discrimination claims. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("[Plaintiff]'s equal protection claim parallels his Title VII claim. The elements of one are generally the same as the elements of the other."). There are two theories available to a plaintiff who alleges a sexual harassment claim: (1) quid pro quo harassment, and (2) hostile work environment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986). For a hostile work environment claim, a plaintiff must establish that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

Where the evidence presented fails to demonstrate the existence of the first element, the defendant is entitled to summary judgment. *See Demoret*, 451 F.3d at 150. Here, even with the facts viewed in the light most favorable to Plaintiff, the evidence presented amounts to little more than Plaintiff's allegations of sexual harassment; these allegations, even if true, do not establish the Rockland was a "workplace permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Plaintiff alleges that Defendant Milliken rubbed up against him "no more than three times" in early 2010 and that Defendant Polhemus touched him two or three times, though he testified that he did not "perceive those to

be sexually connected because [Polhemus] was very, very large." (George Tr. 28:8-15, 50:14-22, 52:9-13). The acts of harassment alleged by Plaintiff are "insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment." *Demoret*, 451 F.3d at 150; *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."). Thus, the Defendants are entitled to summary judgment on Plaintiff's sexual harassment claims.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to terminate this motion, Docket No. 60.

Defendant Sosunmolu Shoyinka is the only remaining defendant. It appears from the docket that Defendant Shoyinka was never served with the summons and complaint. Plaintiff is ordered to show cause by November 21, 2014, why his claims against Defendant Shoyinka should not be dismissed without prejudice for lack of service pursuant to Federal Rule of Civil Procedure 4(m).

Dated: October 23, 2014  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge